UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RYAN J. BROWN,

               Plaintiff,

v.

UNKNOWN HOWELL et al.,

               Defendants.

_____/

Case No. 2:21-cv-128

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought under 42 U.S.C. § 1983 by a person who, at the time the complaint was filed, was a state prisoner. The Court granted Plaintiff Ryan J. Brown leave to proceed *in forma pauperis*. Plaintiff filed his complaint on June 14, 2021. (ECF No. 1.) Following several unsuccessful attempts to supplement his complaint, including filing an amended complaint on October 25, 2021 (ECF No. 6) that did not include the allegations in the original complaint, Plaintiff filed the present motion seeking a temporary restraining order and preliminary injunction (ECF No. 20) and a motion for free copies of his initial complaint so that he may comply with the Court's order (ECF No. 18) to file an amended complaint. (ECF No. 21.) This Court will liberally construe Plaintiff's October 25, 2021 amended complaint to incorporate his initial complaint with exhibits, screen Plaintiff's complaint, and deny Plaintiff's pending motions.

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rule 18, 20, and 21 regarding joinder, the Court will drop Defendants Unknown Vollick, Unknown Benson, Unknown Batho, Unknown Martin, Unknown Wilkins, Unknown Pancheri, Unknown

Chuipalo, Unknown Boik, Connie Horton, B.R. Smith, Unknown Otten, Unknown Ledford, and Unknown Newton, and dismiss Plaintiff's claims against them without prejudice.

With respect to Plaintiff's remaining claims, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Unknown Lovin, Unknown Albon, and Unknown John Doe for failure to state a claim upon which relief can be granted. The Court will also dismiss, for failure to state a claim, all of Plaintiff's claims against Defendant Unknown Howell, except for Plaintiff's claim that Defendant Howell retaliated against Plaintiff for his exercise of protected First Amendment rights. Plaintiff's First Amendment retaliation claim against Defendant Howell is the only claim that remains in the case.

### Discussion

## I.     Factual Allegations

It is not at all clear where Plaintiff resides at the present time—he was paroled by the Michigan Department of Corrections (MDOC) on November 2, 2021. *See* https://mdocweb.state. mi.us/otis2/otis2profile.aspx?mdocNumber=682034 (last visited June 5, 2022). Since then, Plaintiff has provided the Court with several addresses, most recently a post office box in Grand Rapids, Michigan. At the time Plaintiff filed his complaint, however, he was incarcerated with the MDOC at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

2

The events about which he complains occurred at that facility. Plaintiff sued Cook Unknown Howell, Food Service Supervisors Unknown Lovin and Unknown Albon, and Unknown John Doe.

Plaintiff's initial complaint covered a four-month time period from July through October of 2020. Plaintiff alleged that, on July 20, 2020, he suffered a back injury while working in the chow hall. Additionally, he suffered foot and shin pain because he had flat feet that were poorly accommodated by state-issued shoes. Plaintiff returned to work with a 10-pound lifting restriction and instructions to get off his feet, when possible, during his shift.[1]

While working on July 30, 2020, kitchen staff member Hough (not a party) told Plaintiff to sit during down times to rest his feet and back. During one of Plaintiff's resting periods, Defendant Howell told Plaintiff to get up. Plaintiff then told Howell that Hough and Ison (not a party) had given Plaintiff permission to rest. Howell told Plaintiff that Howell did not care what they said. Thereafter, Howell did not permit Plaintiff to rest. Accordingly, on July 31, Plaintiff filed a grievance against Howell.

On August 6, Howell told Plaintiff that, because Plaintiff had filed a grievance against Howell, Howell would write misconduct tickets against Plaintiff. The next day, when Plaintiff reported to work, he informed kitchen worker Miller (not a party) about the work restrictions. Miller told Plaintiff to speak with Captain Burke (not a party) about the restrictions. Howell wrote two "out of place" misconducts against Plaintiff, including a report that Plaintiff was "out of place" at the time Howell knew that Plaintiff was speaking to Captain Burke. Plaintiff claims that these misconduct reports were retaliatory for Plaintiff's grievance.

---

[1] The lifting restriction expired on August 5, 2020. MDOC Medical Detail Special Accommodations Reports (ECF No. 1-1, PageID.20, 23.)

Plaintiff contends that Howell wrote two more false misconduct reports for being "out of place" on October 23. The same day, Howell also wrote two false work evaluation reports.

Plaintiff complained to food service supervisor Defendant Unknown Lovin, but Lovin took no action.

Plaintiff additionally reports:

1. his property was damaged and lost when Plaintiff was taken to segregation, presumably in connection with the "false" misconduct reports;

2. Howell's refusal to permit Plaintiff to rest on July 31 gave Plaintiff sore feet and delayed the healing of Plaintiff's back injury; and

3. Howell's threats to terminate Plaintiff's employment may have had a detrimental impact on Plaintiff's opportunities for parole.

Plaintiff also names as defendants Unknown Albon and Unknown John Doe. Plaintiff makes no allegations regarding Defendant Albon or Defendant Doe.

About three months after Plaintiff filed his initial complaint, he sent the Court a letter which indicated that Plaintiff had recently suffered additional retaliatory acts, sexual harassment, interference with electronic communications, refusal to properly process mail and legal mail, denial of proper hygiene, failure to treat scabies, interference with parole prospects, and failure to protect Plaintiff from threats of assault. (ECF No. 4.) Plaintiff did not name the parties responsible. Plaintiff asked the Court to send additional complaint forms so that Plaintiff could raise these allegations in a new proceeding. Nonetheless, the Court treated Plaintiff's letter as a supplement— an incomplete supplement because it did not identify the parties to be sued—and directed Plaintiff to file an amended complaint. The Court specifically directed Plaintiff to include the claims raised in his initial complaint and his proposed supplement because the amended complaint would supersede his initial complaint. (ECF No. 5.)

Plaintiff filed an amended complaint on October 25, 2021. (ECF No. 6.) Plaintiff's amended complaint did not include the allegations from his initial complaint. Instead, the factual allegations cover the period of time from April 1, 2021, to October 20, 2021. The amended complaint retained the defendants from the initial complaint, even though there were no allegations against those Defendants. The amended complaint added a slew of new Defendants: Prison Counselors Unknown Vollick and Unknown Pancheri; Corrections Officers Unknown Benson, Unknown Chuipalo, and Unknown Boik; Assistant Deputy Warden Unknown Batho, Inspectors D. Martin and Unknown Wilkins; Lieutenant Unknown Pawley; Warden Connie Horton; Library Tech B.R. Smith; and additional Defendants Unknown Otten, Unknown Ledford, and Unknown Newton.

Because generally an amended complaint would supersede the initial complaint, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014), and because the amended complaint did not include any of the allegations that Plaintiff raised in his initial complaint or any other allegations against Defendants Howell, Lovin, Albon, or John Doe, the Court gave Plaintiff one more chance to amend his complaint to include all of his allegations. Plaintiff had informed the Court that he no longer possessed the initial complaint and could not recreate the allegations. The Court advised Plaintiff to do his best to recall and recreate those claims if he intended to pursue them.[2] (Order, ECF No. 14, PageID.118.)

Plaintiff sought an extension of the time to file the amended complaint. (ECF No. 17.) The Court granted an extension. (ECF No. 18.) Nonetheless, when the extended deadline passed, Plaintiff did not file an amended complaint. Instead, he filed a motion for temporary restraining

---

[2] The Court had previously informed Plaintiff that he could obtain copies from the Court, but Plaintiff failed to pay for the copies. (ECF No. 9-3; ECF No. 14, PageID.119.)

order and preliminary injunction (ECF No. 20) and a motion for free copies of his initial complaint (ECF No. 21).

The Supreme Court's instruction to read *pro se* complaints indulgently, *Haines*, 404 U.S. at 520, suggests that the Court might appropriately look beyond the general rule that amended complaints supersede the original. Here, it appears that Plaintiff intended his amended complaint to function as a supplement to his original complaint rather than displacing it.[3]  The Sixth Circuit has concluded that "[i]f . . . the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011).  Accordingly, the Court will liberally construe Plaintiff's amended complaint to incorporate his initial complaint with exhibits.

## II.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

---

[3] Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *Id.*  Because the events in Plaintiff's amended complaint occurred after he filed the original complaint, his amended complaint could be accurately characterized as a supplement.

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4445247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under

the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998)

(declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first named Defendant and the earliest clear factual allegations involving that Defendant to determine which portions of the action should be considered related.[4] Plaintiff's first claim, chronologically and as presented in the complaint, relates to Defendant Howell denying Plaintiff rest periods on July 30, 2020. Plaintiff may join and does join additional claims against Defendant Howell. Plaintiff alleges that Howell retaliated against Plaintiff after he filed a grievance based on Howell's July 30 behavior. And Plaintiff alleges that Howell's

---

[4] The analysis of joinder must start somewhere. Joinder of parties would seem, necessarily, to start with the first-named party because joinder of parties is not an issue until an additional party is named. By accepting the first-named party as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

retaliation cost Plaintiff his job which, in turn, interfered with Plaintiff's prospects for parole. All of those claims are properly joined.

Moreover, Plaintiff's claims against Defendant Lovin and Defendant Albon arise out of the same transaction or occurrence as Plaintiff's claims against Defendant Howell. Plaintiff claims that Lovin is responsible for Howell's actions because Lovin is Howell's supervisor. Lovin also responded to one or more of Plaintiff's grievances regarding Howell. That is also true of Albon. Perhaps that is also the role of Defendant John Doe.

Plaintiff's claims against all of the other Defendants are temporally separated by months from Plaintiff's claims against Defendants Howell, Lovin, Albon, and John Doe. Moreover, Plaintiff's claims against the other Defendants are not related to the denial of rest periods, Plaintiff's back or foot pain, his employment, the negative employment reports or the "out of place" misconduct reports written by Howell, or Plaintiff's grievances regarding those matters. Plaintiff's allegations relating to the other Defendants may involve conduct that Plaintiff considers retaliatory, detrimental to Plaintiff's health or safety, or detrimental to Plaintiff's parole prospects, but they do not arise out of the same transactions or occurrences that prompt Plaintiff's claims against Howell, Lovin, Albon, or John Doe.

Because the Court has concluded that Plaintiff has improperly joined Defendants Vollick, Pancheri, Benson, Chuipalo, Boik, Batho, D. Martin, Wilkins, Pawley, Connie Horton, B.R. Smith, Otten, Ledford, and Newton (herein collectively "the misjoined Defendants") to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo*

*Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

Plaintiff alleges that the misjoined Defendants engaged in conduct from April through October 2021. Plaintiff has sufficient time in the limitations period to file new complaints against the misjoined Defendants, and he will not suffer gratuitous harm if these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop the misjoined Defendants from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Carney*, 2008 WL 485204, at *3. If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[5]

### III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[5] Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. It is not at all clear that the claims against the list of dropped parties are sufficiently related to be joined in a single action. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's allegations against Howell implicate Plaintiff's rights under the First and Eighth Amendments. Plaintiff also claims that Howell interfered with Plaintiff's Sixth Amendment right to parole. Because the other Defendants are apparently liable only as supervisors of Howell or persons who failed to remedy Howell's wrongdoing in response to complaints and grievances, the conduct would implicate the same constitutional rights.

### A.    Claims Against Defendant Howell

#### 1.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

14

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's allegations fall short, certainly with respect to the subjective component of the deliberate indifference standard, and perhaps with respect to both components. Plaintiff alleges and documents that he was subject to a 10-pound lifting restriction for a week after he returned to work in the kitchen. But he does not claim that Defendant Howell was aware of the restriction. He indicates that he told Hough and Ison about the restriction and that they told him to rest during his shift, but he does not allege that he told Howell about the restriction. Nor does Plaintiff suggest that Defendant Howell disregarded that restriction. Even if Howell was aware of the lifting restriction, Plaintiff does not contend that Howell made Plaintiff lift more than 10 pounds.

Plaintiff alleges also that he had flat feet and that the state-issued shoes made his feet and shins hurt. There is nothing in the complaint to suggest that Plaintiff's flat feet presented a substantial risk of serious harm. The condition is not even referenced in the medical documents that Plaintiff attaches to his complaint. And there is nothing in the complaint to suggest that Defendant Howell was aware of Plaintiff's flat feet.

The complaint makes clear that Plaintiff told Howell that Hough and Ison permitted Plaintiff to rest during his shift, but there is nothing in the complaint to indicate that Howell was aware why they permitted Plaintiff to rest. The need is certainly not apparent from the medical documents Plaintiff has supplied.

15

Howell's response reveals that he was deliberately indifferent to the permissions given by Hough and Ison. But Howell's response does not suggest a deliberate indifference to the back, foot, and shin pain that Plaintiff reports resulted in the permission in the first place. Plaintiff's allegations simply do not support the inference that Defendant Howell knew of a substantial risk of serious harm to Plaintiff. Accordingly, he has failed to state a claim for violation of his Eighth Amendment rights.

### 2. Interference with Parole

Plaintiff mentions the Sixth Amendment when referencing his right to parole. (Compl., ECF No. 1, PageID.8.) Plaintiff does not explain how his Sixth Amendment rights might have been violated. But Plaintiff also mentions that Howell's actions may have interfered with Plaintiff's right to "parole liberty." (*Id.*) The Court liberally construes Plaintiff's allegations as a claim to denial of a liberty interest without due process of law in violation of the Fourteenth Amendment.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty

16

interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, until Plaintiff has served his maximum sentence he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Even if Defendant Howell's actions somehow interfered with Plaintiff's parole prospects, therefore, that interference does not implicate the protections of the Due Process Clause. In the absence of a liberty interest, Plaintiff's allegations fail to state a claim for the denial of due process.

### 3.    Interference with Property

Plaintiff also alleges that his property was damaged or taken when he was moved to segregation, presumably because of Howell's "false" misconduct reports. Plaintiff's interest in his

property is protected by the Due Process Clause. Nonetheless, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth

Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, any claim that Howell deprived Plaintiff of his property without due process is properly dismissed.

### 4.    First Amendment Retaliation

Plaintiff filed a grievance against Defendant Howell after Howell denied Plaintiff rest breaks during his shift. Thereafter, Plaintiff alleges, Howell threatened to file false misconducts against Plaintiff because of the grievance. Howell then filed "out of place" misconduct reports against Plaintiff as well as negative employment reports. Plaintiff was found not guilty of the misconducts, but he was eventually removed from his work assignment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff has adequately alleged protected conduct.

19

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff claims that Howell retaliated by filing false misconduct reports. The sanctions attendant to a misconduct determination qualify as adverse action. Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). Additionally, although there is no constitutional right to prison employment, the Sixth Circuit has indicated that termination of prison employment in retaliation for filing non-frivolous grievances can constitute adverse action. *See Walton v. Gray*, 695 F. App'x 144 (6th Cir. 2017) ("This court has indicated that loss of a prison job can constitute an adverse action for retaliation purposes." (citing, among others, *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005))); *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (observing that a threat to move the plaintiff out of his unit so that he would lose his job was capable of deterring a person of ordinary firmness from exercising protected rights).

Finally, Plaintiff has adequately alleged that the adverse action was motivated by his protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom

20

be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff's claim that Howell acted in retaliation for Plaintiff's grievance goes beyond merely conclusory allegations. Plaintiff states: "On 8-6-20 when coming [through] chow hall line Unknown Howell made the statement "Hey Brown since you wanna write grievances on me, I'm going to write you tickets until they put you in level 4!" (Compl., ECF No. 1, PageID.3.) Accordingly, Plaintiff has alleged all of the elements of a First Amendment retaliation claim.

### B.    Claims Against Defendants Lovin, Albon, and John Doe

#### 1.    No Allegations

After naming Defendants Albon and John Doe, Plaintiff makes no factual allegations against them. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant

did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Albon and John Doe in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### 2.    Respondeat Superior

Plaintiff at least mentions Defendant Lovin in the body of his complaint. Plaintiff states:

> Every time . . . I wrote a kite to Unknown Lovin (food service supervisor) making him aware of every situation and my medical conditions requesting new job placement that doesn't cause me discomfort or is away from Unknown Howell to discontinue his harassment and retaliation. Unknown Lovin took no action and failed to properly train, supervise, and discipline his employee when needed to do so.

(Compl., ECF No. 1, PageID.7.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Lovin encouraged or condoned the conduct of Howell, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about Lovin's conduct. His vague and conclusory allegations of

supervisory responsibility are insufficient to demonstrate that Defendant Lovin was personally involved in the events surrounding Howell's denial of rest periods, "false" misconduct reports, or negative work reports. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action is premised on nothing more than respondeat superior liability, his action fails to state a claim.[6]

## IV. Plaintiff's Pending Motions

Plaintiff has filed two motions that remain pending. First, Plaintiff asks the Court to enter a temporary restraining order and preliminary injunction (ECF No. 20) to prevent the misjoined Defendants from interfering with Plaintiff's parole by falsely reporting contact with a "restricted individual, a former victim. Plaintiff accused the misjoined Defendants from interfering with his parole in that way as part of Plaintiff's amended complaint. Second, Plaintiff asks the Court to provide a copy of his original complaint so that he can comply with the Court's order to amend the complaint to include the original complaint allegations. (ECF No. 21.)

### A.  Temporary restraining order and preliminary injunction

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following

---

[6] To the extent that Plaintiff named Defendants Albon and John Doe for their respective roles in responding—or failing to properly respond—to Plaintiff's grievances, Plaintiff's claims against them would be properly dismissed for the same reason.

elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)). A party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in his complaint. *See Colvin v. Caruso,* 605 F.3d 282, 299-300 (6th Cir. 2010). A motion for preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable, especially when the only remaining defendant has no power to change the conditions of plaintiff's confinement at his present institution. Simply put, a plaintiff is not entitled to a preliminary injunction on claims not pending in the complaint. *See Ball v. Famiglio,* 396 F. App'x 836, 837 (3d Cir. 2010).

The conduct Plaintiff seeks to enjoin by way of his motion is not part of the complaint claims that are properly before the Court. Even if Plaintiff were to prevail on the merits of the claims before the Court, he would not be entitled to the injunctive relief he seeks. Plaintiff's claims for injunctive relief relate to claims that are being dismissed without prejudice because they are misjoined. Accordingly, Plaintiff is not entitled to injunctive relief on those claims and his motion will be dismissed.

### B.    Motion for a free copy of the complaint

Plaintiff also asks the Court to provide him a free copy of the complaint to assist him in complying with the Court's order to file an amended complaint. The Court has liberally construed Plaintiff's filings—his original complaint and his amended complaint—as one complaint. That approach obviates the need for Plaintiff to file an amended complaint and, therefore, the need for Plaintiff to obtain a copy of the original complaint. Therefore, Plaintiff's motion will be denied as

moot. Moreover, the Court vacates that part of the February 4, 2022, order that required Plaintiff to file an amended complaint.

## Conclusion

The Court has liberally construed Plaintiff's amended complaint (ECF No. 6) as incorporating his original complaint and exhibits (ECF No. 1). Having reviewed Plaintiff's pleadings under Rule 21 of the Federal Rules of Civil Procedure, and concluded that certain parties are misjoined, the Court will drop as parties Defendants Vollick, Pancheri, Benson, Chuipalo, Boik, Batho, D. Martin, Wilkins, Pawley, Connie Horton, B.R. Smith, Otten, Ledford, and Newton and dismiss without prejudice Plaintiff's claims against them.

Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaints against Defendants Lovin, Albon, and John Doe for failure to state a claim upon which relief can be granted. The Court will also dismiss, for failure to state a claim, Plaintiff's Sixth, Eighth, and Fourteenth Amendment claims against remaining Defendant Howell. Plaintiff's First Amendment retaliation claim against Defendant Howell remains in the case.

Finally, the Court will deny Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 20) and Plaintiff's motion for a free copy of the original complaint (ECF No. 21).

An order consistent with this opinion will be entered.


Dated:   June 13, 2022                              /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge