UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RYAN BROWN, #682034,                                    Case No. 2:21-cv-128

                Plaintiff,                      Hon. Jane M. Beckering
                                               U.S. District Judge

    v.

UNKNOWN HOWELL,

                Defendant.
_____/

## **REPORT AND RECOMMENDATION**

### I.    **Introduction**

This Report and Recommendation (R. & R.) addresses Defendant's motion for partial summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 39.)

Plaintiff — state prisoner Ryan Brown — filed suit pursuant to 42 U.S.C. § 1983 on June 14, 2021.  Brown initially filed an unverified complaint.  (ECF No. 1.) He then filed a verified amended complaint, which did not incorporate any of the claims from his original complaint.  (ECF No. 6.)  The Court liberally construed Brown's amended complaint as a supplement to his original complaint, and screened Brown's claims in accordance with 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c). (ECF No. 23, PageID.156.)  At this stage of the case, only Brown's First Amendment retaliation claims against Defendant Food Services Steward Howell remain.

Brown alleges that in July of 2020, he was assigned to work in the Chippewa Correctional Facility's chow hall.  (ECF No. 1, PageID.3.)  At the time, Brown suffered from back, foot, and shin pain that required him to take periodic rests throughout his shift.  But on July 30, 2020, Defendant Howell refused to allow Brown to rest during his shift.  (*Id.*)  After Brown filed a grievance against Howell for refusing to allow him to rest, Brown says that Howell retaliated against him by threatening to issue Brown misconduct tickets until his classification level was increased, issuing Brown retaliatory "out of place" misconduct tickets, and issuing Brown false work evaluation reports.  (*Id.*, PageID.3-6.)  For the sake of clarity, Brown's remaining retaliation claims are summarized in the table below.

| Claim No. | Protected Conduct | Adverse Action | Evidence of Causation |
|---|---|---|---|
| 1 | Brown's July 31, 2020, grievance against Howell.  (ECF No. 1, PageID.3.) | Howell's August 6, 2020, threat to issue misconduct tickets.  (*Id.*, PageID.3.) | Howell's August 6, 2020, threat to issue misconduct tickets.  (*Id.*, PageID.3.) |
| 2 | Same as above. | August 7, 2020, out-of-place misconduct ticket.  (*Id.*, PageID.4.) | Same as above. |
| 3 | Same as above. | Second August 7, 2020, out-of-place misconduct ticket.  (*Id.*) | Same as above. |
| 4 | Brown's July 31, 2020 grievance against Howell.  (*Id.*, PageID.3.)<br><br>Brown's October 21, 2020, oral grievance against Howell.  (*Id.*, PageID.6.) | October 21, 2020, false work evaluation.  (*Id.*) | Same as above. |
| 5 | Same as above. | Howell's October 23, 2023, threat to issue misconduct tickets.  (*Id.*, PageID.5.) | Howell's August 6, 2020, threat to issue misconduct tickets.  (*Id.*, PageID.3.)<br><br>Howell's October 23, 2023, threat to issue misconduct tickets.  (*Id.*, PageID.5.) |
| 6 | Same as above. | October 23, 2020, out-of-place misconduct ticket.  (*Id.*) | Same as above. |

| Claim No. | Protected Conduct | Adverse Action | Evidence of Causation |
|---|---|---|---|
| 7 | Same as above. | October 23, 2020, false work evaluation.  (*Id.*) | Same as above. |

Defendant Howell now moves for partial summary judgment, asserting that Brown did not properly exhaust his administrative remedies with respect to several of his claims.  (ECF No. 22.)  More specifically, Howell argues that Brown did not exhaust his retaliation claims related to the work evaluations, the October 23, 2020, threat to issue misconduct tickets, or the October 23, 2020, misconduct ticket (Claims 4, 5, 6, and 7 above).  Howell reasons that although Brown filed a grievance against Howell for threatening to issue and ultimately issuing a retaliatory misconduct ticket against Brown on October 23, 2020 (grievance URF-20-10-2807-28e), that grievance was rejected as untimely at Step II of the grievance process.  (ECF No. 40, PageID.243.)  And Brown did not raise the issue of retaliation during his misconduct hearing process.  Howell further argues that although Brown filed a grievance against Howell for issuing the retaliatory work evaluation on October 21, 2020 (grievance URF-20-11-2916-28e), that grievance was rejected as untimely at Step I of the grievance process.  (*Id.*)  And Brown did not file a grievance against Howell for issuing the retaliatory work evaluation on October 23, 2020.  Brown did not respond.

The undersigned respectfully recommends that the Court grant in part and deny in part Defendant's motion for partial summary judgment.  Brown's grievance records create a genuine issue of material fact as to whether Brown had a valid reason for untimely submitting his Step II appeal of grievance URF-20-10-2807-28e, such that the Step II appeal was improperly rejected.  Furthermore, Brown's Misconduct

Hearing Report for the October 23, 2020, misconduct ticket does not definitively establish that Brown failed to raise retaliation during the hearing.  However, Brown's grievance records establish that grievance <u>URF-20-11-2916-28e</u> was properly rejected as untimely, and that Brown did not appeal a grievance regarding the October 23, 2020, work evaluation through Step III of the grievance process.  Accordingly, the undersigned recommends that the Court deny Howell's motion as to Brown's claims that Howell threatened to file and ultimately did file a false misconduct ticket against Brown on October 23, 2020 (Claims 5 and 6) and grant Howell's motion as to Brown's claims that Howell filed false work evaluations against him on October 21, 2020, and October 23, 2020 (Claims 4 and 7).

## II.    Factual Allegations

In July of 2020, Brown was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  (ECF No. 1, PageID.1.)  Brown says that on July 20, 2020, he was working in the URF chow hall when he injured his back.  (*Id.*, PageID.3.)  When he spoke with medical staff about the back injury, he also informed them that he was experiencing foot and shin pain related to the state shoes that he was forced to wear while working in the chow hall.  Brown says that he eventually returned to work with a ten-pound lifting restriction and directions from medical staff to get off of his feet whenever possible during his shift.  (*Id.*)

On July 30, 2020, a member of the URF kitchen staff told Brown that he could sit "during down times" in order to rest his feet.  But when Brown followed those directions, he was approached by Defendant Food Services Steward Howell.  (*Id.*)

4

Howell allegedly berated Brown and told him to stand up.  When Brown informed Howell that other staff had permitted him to sit and rest, Howell said that he did not care, and ordered Brown to stand up.  (*Id.*)  Brown says that being forced to stand the entirety of his shift caused him major pain in his feet, legs, and back.

On July 31, 2020, Brown says that he filed a grievance against Howell for disregarding his medical conditions.  (*Id.*)  On August 6, 2020, Brown says that Howell accosted Brown as he went through the chow line, stating: "Hey Brown since you wanna write grievances on me, I'm going to write you tickets until they put you in level 4!"  The next day, Brown was speaking with facility staff when Howell issued him a false misconduct for being out of place.  (*Id.*, PageID.3-4.)  A few hours later, Howell issued Brown a second false misconduct for being out of place.  (*Id.*, PageID.4-5.)

Brown alleges that on October 21, 2020, he told Howell that he was going to write a grievance against Howell for threatening Brown with misconduct tickets after Howell ordered Brown to violate Covid-19 protocols in chow hall.  (*Id.*, PageID.6.)  Howell allegedly responded by issuing Brown a false work evaluation.

On October 23, 2020, Brown was going through chow line when Howell again threatened to issue Brown misconduct tickets until his classification level was increased.  (*Id.*, PageID.5.)  The same day, Howell issued Brown a third false

misconduct ticket for being out of place.[1]  (*Id.*, PageID.5-6.)  Howell also issued Brown

a second false work evaluation.  (*Id.*, PageID.6.)

## III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no

genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1]    This Court initially read Brown's complaint as alleging that he was issued two out of place misconduct tickets on October 23, 2020.  (*See* ECF No. 23, PageID.155.) But after reading the complaint and its attachments, which include two misconduct tickets from August 7, 2020, and one misconduct ticket from October 23, 2023, the undersigned believes that Brown intended to allege that he was issued only one out of place misconduct ticket on October 23, 2020.  (ECF No. 1-1, PageID.32-35, 43.)

[2]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement

8

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where,

why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and

therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.  For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,  the inmate must raise the issue during the initial misconduct hearing.  *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue.  *Id.*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process).  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R. & R. adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322,

11

> 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison
> remedies in the manner the State provides—by, say, identifying *all*
> relevant defendants—not only furthers [the PLRA's] objectives, but
> it also prevents inmates from undermining these goals by
> intentionally defaulting their claims at each step of the grievance
> process, prompting unnecessary and wasteful federal litigation
> process."). An exception to this rule is that prison officials waive any
> procedural irregularities in a grievance when they nonetheless
> address the grievance on the merits. *See id.* at 325. We have also
> explained that the purpose of the PLRA's exhaustion requirement "is
> to allow prison officials 'a fair opportunity' to address grievances on
> the merits to correct prison errors that can and should be corrected
> to create an administrative record for those disputes that eventually
> end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## V.    Analysis

Howell concedes that Brown properly exhausted his claims that Howell retaliated against him by threatening to issue misconduct tickets against him on August 6, 2020, and by issuing two false, out-of-place misconduct tickets against him on August 7, 2020 (Claims 1, 2, and 3). (ECF No. 40, PageID.243-244.) But, as set forth above, Howell avers that that Brown did not exhaust his retaliation claims related to (1) the work evaluations, (2) the October 23, 2020, threat to issue misconduct tickets, or (3) the October 23, 2020, misconduct ticket (Claims 4, 5, 6, and 7). (*Id.*) The undersigned addresses Howell's arguments in turn.

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

### a. Claims 5 and 6

Howell first reasons that although Brown filed grievance <u>URF-20-10-2807-28e</u> against Howell for threatening to issue and ultimately issuing a retaliatory misconduct ticket against Brown on October 23, 2020, that grievance was rejected as untimely at Step II of the grievance process and therefore did not serve to exhaust Brown's claims.  (ECF No. 40, PageID.243.)  The Step I grievance, Step II appeal, and Step II rejection of grievance <u>URF-20-10-2807-28e</u> are shown below.

(ECF No. 40-3, PageID.284-286.)

As indicated by Howell, grievance URF-20-10-2807-28e was rejected as

untimely at Step II of the grievance process.  However, it is not apparent from the

grievance records that the rejection was proper.  The Michigan Department of

Corrections (MDOC) policy on prisoner grievances specifically states that while

grievances shall be rejected if they are untimely filed, grievances "shall not be

rejected if there is a valid reason for the delay; e.g. transfer." (ECF No. 40-2, PageID.249 (MDOC Policy Directive 03.02.130 ¶ J(5)).) Notably, the Warden rejected Brown's Step II appeal because it was filed after December 8, 2020. But Brown did not receive a Step I response until December 7, 2020. And Brown says that he requested a Step II appeal form, as required by MDOC policy, but that he did not receive the form until December 21, 2020. In the opinion of the undersigned, a reasonable jury could find that there was a valid reason for Brown's delay in filing his Step II grievance appeal, and that the Warden's rejection of the grievance was therefore improper. And when a grievance is improperly rejected, the grievance process is rendered unavailable with respect to the claims therein. *See, e.g.*, *Wilson v. Taskila*, No. 2:21-CV-236, 2022 WL 16745768, at *5 (W.D. Mich. Sept. 20, 2022) (citing *McDuff v. Addis*, No. 1:17-CV-912, 2018 WL 3239491, at *4 (W.D. Mich. July 3, 2018)) ("[W]hen the MDOC improperly rejects a grievance as concerning multiple unrelated issues, it renders the grievance process unavailable with respect to the claims therein."), *R. & R. adopted*, No. 2:21-CV-236, 2022 WL 16744819 (W.D. Mich. Nov. 7, 2022).

The undersigned acknowledges that one of the claims in grievance URF-20-10-2807-28e — the October 23, 2020, retaliatory misconduct ticket claim — is non-grievable under MDOC policy. Generally, a prisoner must exhaust a retaliatory misconduct ticket claim through the misconduct hearing process instead. *Siggers*, 652 F.3d at 693-94. But when MDOC staff consider a grievance regarding a retaliatory misconduct ticket on its merits rather than rejecting it as non-grievable,

15

the MDOC waives the argument that the claim was improperly exhausted.  *Reed-Bey*,

603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5

(W.D. Mich. Nov. 26, 2019), *R. & R. adopted*, No. 2:18-CV-150, 2020 WL 1043862

(W.D. Mich. Mar. 4, 2020).

Here, grievance URF-20-10-2807-28e was considered on its merits at Step I of

the grievance process but was not considered on its merits at Step II or III.  Howell

may therefore contend that the MDOC did not waive the procedural defect, and that

Brown was required to exhaust via the misconduct hearing process.  But even

accepting that as true, the evidence that Howell relies on to show that Brown did not

exhaust his October 23, 2020, retaliatory misconduct claim is the Misconduct Hearing

Report attached to Brown's complaint.  The pertinent portion of that Misconduct

Hearing Report is shown below:

| GENERAL INFORMATION | | | |
|---|---|---|---|
| Prisoner Number<br>682034 | Prisoner Name<br>Brown | Facility Code<br>URF | Violation Date<br>10/23/2020 |

| MISCONDUCT VIOLATION | | | |
|---|---|---|---|
| Hearing<br>Class II ☒<br>Class III ☐ | Misconduct Charges<br>Out of Place | | |
| Misconduct Charge if Changed by Hearing Officer | | Plea<br>☐ Guilty    ☒ Not Guilty | |

| WAIVER OF HEARING | | |
|---|---|---|
| I understand I have a right to a hearing.  I waive my right to a hearing and plead guilty to all charges.  I also waive my right to appeal and accept the sanctions imposed. | Prisoner's Signature | Date |

**HEARING REPORT (Do Not Complete If Hearing Waived)**

Evidence and/or prisoner statement in addition to misconduct report: Prisoner is present for hearing. Prisoner pleads not guilty I could not go to my job when I was on NON BOND TOPLOCK .

Reasons for findings:  Prisoner found not guilty. Prisoners cannot leave the unit on non bond toplock for their jobs.

16

(ECF No. 1-1, PageID.44.)

True, the Misconduct Hearing Report does not reflect that Brown asserted that the misconduct ticket was retaliatory. However, this Court has previously determined that hearing reports alone are insufficient to establish a plaintiff's failure to exhaust claims of retaliatory misconduct tickets. As noted by the Court in *Annabel v. Novak*, without evidence that the hearing officer "generally was obligated to, or did in this particular instance, record in the hearing report or investigation report every statement, assertion, defense, or claim made by Plaintiff," the hearing report does not prove that the plaintiff failed to raise retaliation. No. 1:19-CV-199, 2020 WL 3884313, at *3 (W.D. Mich. Mar. 2, 2020), *R. & R. adopted*, No. 1:19-CV-199, 2020 WL 1921530 (W.D. Mich. Apr. 21, 2020). And because Brown was found not guilty of the charge, he was not required to file an appeal based on retaliation.

Ultimately, it is the undersigned's opinion that Howell has not discharged his initial burden with respect to Brown's claims that Howell threatened to issue and ultimately issued false misconduct tickets on October 23, 2020 (Claims 5 and 6); there are genuine issues of material fact bearing on whether Brown exhausted his administrative remedies with respect to those claims.

### b. Claim 4

Howell next argues that although Brown filed grievance URF-20-11-2916-28e against Howell for issuing a retaliatory work evaluation against Brown on October 21, 2020, that grievance was rejected as untimely at Step I of the grievance process and therefore did not serve to exhaust Brown's claims. (ECF No. 40, PageID.243.)

The pertinent portions of Brown's Step I grievance and Step I grievance response are

shown below.



MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

Date Received at Step I  _11-13-20_    Grievance Identifier: _URF 2011 11 2916 28 E_

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Ryan Brown | 682034 | URF | S-112 | 10/21/20 | 11/9/20 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _11/9/20_
If none, explain why. Wrote Kite to Kitchen.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On the date evaluated The chow hall was full and the tables were all full. However F/S Howell Told me to keep wiping tables even tables that were occupied by 2 prisoners which was the maximum amount of prisoners Due to Social Distancing Covid-19 protocol. I told F/S Howell I cannot wipe tables be occupied. There was no further communication I finished my shift. F/S Howell has written me 2 major misconducts both Dismissed in retaliation for grieving his behavior. This work Evaluation is retaliation once again and is False and should be disgarded due to his previous falsified misconducts which were dismissed.

_Ryan B_
Grievant's Signature

**Michigan Department of Corrections**
**GRIEVANCE REJECTION LETTER**

**DATE:**      **Friday, November 13, 2020**

**TO:**       **BROWN**          **682034 LOCATION:  URF      S      112**

**FROM:**      M. McLean, Grievance Coordinator

**SUBJECT:**   Rejection

Your Step I grievance regarding       **Grievance Rejections**

was received in this office on    **11/13/20**    and was rejected due to the following reason:

You have exceeded your time limits in filing a grievance and at the same time provided no reasonable circumstance beyond your control that would have prevented you from filing this grievance in a timely fashion. Your grievance has been rejected for these reasons.  If you have further questions consult PD 03.02.130 and OP 03.02.130, which are available in the institutional library.

Any future references to this grievance should utilize this identifier:

          URF — 20— 11 —   2916   — 28 E

(ECF No. 40-3, PageID.277-278.)

MDOC policy requires prisoners to attempt to resolve grievable issues with prison staff within two business days of becoming aware of the issue.  MDOC P.D. 03.02.130 ¶ Q.  If the prisoners are unable to resolve the issue with staff, MDOC policy requires them to file a Step I grievance within five business days of the attempted resolution.  *Id.* at ¶ W.  By his own account on the Step I grievance form, Brown attempted resolution of his issue **thirteen days after it arose**.  He filed his Step I grievance the same day.  In the undersigned's opinion, Brown's grievance URF-20-11-2916-28e plainly ran afoul of MDOC policy; Howell has discharged his burden of establishing that there are no genuine issues of material fact, and that Brown failed to properly exhaust his retaliation claim based on the October 21, 2020, work evaluation (Claim 3).

### c.  Claim 7

Howell finally argues that Brown failed to exhaust his October 23, 2020, retaliatory work evaluation claim because he failed to pursue a grievance on the issue through Step III of the grievance process.  (ECF No. 40, PageID.242.)  Howell provided Brown's Step III Grievance Report, and the grievances filed and appealed through Step III of the process between August and December of 2020.  (ECF No. 40-3.)  A review of these grievances confirms that Brown did not pursue a grievance related to the October 23, 2020, work evaluation.  Howell has therefore discharged his burden of establishing that there are no genuine issues of material fact, and that Brown failed to properly exhaust his retaliation claim based on the October 23, 2020, work evaluation.

19

## VI.    Recommendation

The undersigned respectfully recommends that the Court grant in part and deny in part Defendant's motion for partial summary judgment (ECF No. 39). Brown's grievance records create a genuine issue of material fact as to whether Brown had a valid reason for untimely submitting his Step II appeal of grievance URF-20-10-2807-28e, such that the Step II appeal was improperly rejected.  Furthermore, Brown's Misconduct Hearing Report for the October 23, 2020, misconduct ticket does not definitively establish that Brown failed to raise retaliation during the hearing. However, Browns grievance records establish that grievance URF-20-11-2916-28e was properly rejected as untimely, and that Brown did not appeal a grievance regarding the October 23, 2020, work evaluation through Step III of the grievance process.  Accordingly, the undersigned recommends that the Court deny Howell's motion as to Brown's claims that Howell threatened to file and ultimately filed a false misconduct ticket against Brown on October 23, 2020 (Claims 5 and 6) and grant Howell's motion as to Brown's claims that Howell filed false work evaluations against him on October 21, 2020, and October 23, 2020 (Claims 4 and 7).

If the Court accepts this recommendation, the following retaliation claims will remain:

- Brown's claim that Howell threatened to issue him misconduct tickets on August 6, 2020 (Claim 1),

- Brown's claim that Howell issued him a false misconduct ticket on August 7, 2020 (Claim 2),

- Brown's claim that Howell issued him a second false misconduct ticket on August 7, 2020 (Claim 3),

- Brown's claim that Howell threatened to file misconduct tickets against him on October 23, 2020 (Claim 5), and

- Brown's claim that Howell issued him a third false misconduct ticket on October 23, 2020 (Claim 6).


Dated:  January 2, 2024                          /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).